25 5 4 4 3 USA v. Charles Mixon argument not to exceed 15 minutes per side. Ms. Coffin, you may proceed. Good afternoon I'm Jennifer Coffin here with my colleague Erin Russ today on behalf of Charles Mixon. We'd like to reserve three minutes of our time. Thank you. I'll begin with the Texas burglary statute and Ms. Russ will follow with the Rule 403 issue. This court should decline to follow the Fifth Circuit's reading of Texas law. Mr. Mixon has brought unassailable proof that the Fifth Circuit is wrong in its view that for every conviction under subsection a3 of the Texas burglary statute the defendant formed an intent to commit felony or an assault. That proof is the conviction of Cesar Gonzalez which is explicitly predicated on a reckless assault. The government ignores that case and the other post Devon cases that Mr. Mixon cites in his brief and instead pivots to a new theory that would change the nature of generic burglary so that it doesn't match the hundred-plus statutes in state in the states from which Taylor derived its definition of generic burglary. Gonzalez proves that this particular statute is not generic burglary because it dispenses with the enduring element of generic burglary which is the intent to commit a crime. The other thing that happens with this statute is by its terms under its plain text it encompasses the commission of felonies with a negligent mens re or no mens re at all so the government's theory that would try to capture reckless offenses doesn't even solve that mismatch. For that reason we would ask the court to exercise its own independent reading of Texas law, look at the actual prosecutions that occur and conclude that this particular variant of Texas burglary does not require the classic generic element of intent to commit a crime. Can you help me with the timeline? You're saying there's some more recent cases that modified earlier decisions so we have the Fifth Circuit en banc unanimously reading the statute one way. Yes. And you're saying since then is the Devon case and then after that? No, Devon was in 1988 and there were several there have been several cases that were decided before Harold made- I guess my question is this. I'm not sure exactly, I just want to make sure I'm following you, but you're saying there's been some change in Texas law that we should take account of? No, I'm saying that- Has anything changed since the Fifth Circuit's ruling? Nothing has changed in the law. You're saying the Fifth Circuit's wrong? I'm saying the Fifth Circuit misconstrued Texas. Okay, because I thought you're saying maybe there were some developments post en banc unanimous Fifth Circuit decision but that's not what you're saying? No, what I'm saying is we have- what happened in Harold is that the defendant there didn't bring cases to show that his reading of the Texas statute was correct and so the court said well you didn't bring any cases plus in Harold the court said we're going to look at Texas law and it read Devon and what it did was it over read Devon to mean something that actually doesn't which is shown by a bunch of- that's a very casual word but several Texas prosecutions that show that Devon doesn't mean what the Fifth Circuit said it meant and what has happened in the Fifth Circuit is that litigants have not been able to get the Fifth Circuit to revisit that ruling but that doesn't mean it was correct and so- Has this issue been presented to the Fifth Circuit since Gonzalez the case that that you're bringing before us? Not that I know of. So in Wallace when there were examples that were brought before a panel of the Fifth Circuit right that wasn't an en banc case? That's right. Right, my understanding was that the defendant maybe had some examples then but it didn't really move the needle they didn't seem to consider- be considered but are those examples any different or Gonzalez wasn't- is even more recent than Wallace, is that right? Yes, Gonzalez is more recent so the defendant there brought examples but what Wallace said was well Harold didn't depend only on the fact that the defendant didn't bring cases it also was interpreting the Texas law by reading Devon the way it did and so it said we're bound by that. In fact the last line is interesting because it says if Texas burglary is generic burglary which Harold has said it is then we're bound by that. There is some question it says okay he's brought cases but we can't do anything with them because there was more to Harold than that. Those cases actually I did go to look at those cases and the defendant in that case brought some of the cases that we brought in our- not Gonzalez because it hadn't happened yet but one of those cases I thought was quite interesting and it's called Sneed versus State and I can give you the citation to it but in that case the defendant came to his ex-girlfriend's house knocked on the door knocked on the door knocked on the door and so she finally opened the door to hand him a bag of his things and he just like I want to talk to you you know he put his foot in the door and they struggled over the door and in that struggle the door bopped her in the head and injured her and that he was convicted under a3. There was no discussion in that case about like what you can you convict someone for but it was obvious by the facts that this very much could have been a reckless conduct. So but let's just sort of like clarify what you're saying and what Judge Blumkatz asked. Yes. So has anyone brought the argument that you're making to the Fifth Circuit post their en banc decision and the panel said we're foreclosed from considering it because we rejected for it? That was Wallace. That happened in Wallace. Yes the court the panel said we're bound by Harold's interpretation. Was there an en banc petition? Obviously we don't have to follow the Texas courts but they're gonna see it the Fifth Circuit's gonna see a lot more Texas burglary cases than we are so. That's true but I think from my understanding the Fifth Circuit what happens in situations like this it is very quick well what happens is they do summary denials like people could they file their petitions they get summarily denied in one line it's just sort of it becomes wrote if it's the same issue they've seen before. That does happen in the Fifth Circuit a lot it's not that is not something that happens here so that could be what's happening there but what I would say is this court in the past has not hesitated to engage in its own analysis of a state that's in a different circuit in the categorical. Of course we'll do it I just wanted to know they are seeing these a lot more I just wanted to know if there's any evolution in their jurisprudence. Well I can say that the the person who litigated Harold to has been has been raising this issue for a very long time and continues to raise it but the Fifth Circuit is like we're foreclosed by Harold and getting the court to take it again on Bonk has proven impossible. Can I ask the Fifth Circuit case seems to really rest on Devon. Yes. Which as you mentioned was in 1988. The statutes actually changed since 1988 to add assault right and it's clear under Texas law that assault can be committed recklessly that it's not a specific intent crime. Absolutely yes and there are several cases that actually deal with subsection 8a3 after the addition of assault where the jury's instructed that the offense committed could have been commended intentionally knowingly or recklessly. Rejecting the arguments by the defendant that there was no intent proven. They say well we don't need to prove that because we're proving the commission of the offense instead and that encompasses reckless conduct. So it seems kind of like later on with the addition of assault it became much maybe even more clear that 8a3 can encompass crimes that are committed recklessly while someone is you know inside a place where they don't have. And I think that makes sense because in Devon the indictment was that he committed theft which is a specific intent crime so it kind of wasn't presented. They didn't have any occasion to consider whether the language of the statute even then just the word felony encompassed reckless offenses and whether that was something that could be done. So thank you very much. Hello. The district court abused its discretion under rule 403 and the evidence of old chief by admitting the highly prejudicial facts of Mr. Mixon's prior robbery conviction by allowing those to go to the jury despite Mr. Mixon's offer to stipulate that the conviction constituted one of the three separate offenses committed on occasions different that's required to trigger the Why was that prejudicial to the occasions different issue on the bifurcated trial here as opposed to the underlying guilt? Sure prejudice is measured by whether evidence is unfairly able to tax the jury's capacity to hold the government to its burden of proof. So the concern here is that the prejudicial nature of the facts of the prior robbery taxed the jury's ability to hold the government to its burden with respect to the three burglary convictions that occurred in a very short period of time within seven days of each other and that occurred 13 years after the prior robbery. If he did something 13 years before that taxed using your word the jury's determination as to whether the other three occurred within a few days of each other? What is so concerning about the facts of the robbery conviction there are two aspects that make it particularly concerning. One is the arresting nature of the facts themselves and the second is the similarity of those facts to the carjacking conviction that the same exact jury just convicted Mr. Mixon of. Why does that matter? I don't, he's got, just because the offense he just committed is similar to offense he committed previously, why does that, he's got other offenses in there too. Sure your honor, the concern is that the arresting nature of these facts is going to lure the jury into the thinking that Mr. Mixon is just a bad person. This is a recidivism. Absolutely. Every one of these crimes probably suggests he's a bit of a bad person in one sense. To one degree or another. Yes your honor. Suppose the first crime was murder. Suppose there's a murder that happens 20 years before the next sets of crimes. Would you make the same argument? Most likely we would make the same argument. Yes your honor. Of course every case is a different situation. Is there a certain time? Is there a bright line here? How much? I don't think there is a bright line here your honor and I don't think there can be a bright line. Is it a time issue or is it a similarity issue or how, if it's six months before the other crimes is that too long or how do we... I think that would be a much closer case but that's not this case. This case has a 13-year difference and this case... Every crime, basically every crime. I mean in other words I don't, the fact that this first crime and the last crime were similar doesn't move me but but your point is any crime, doesn't matter what the crime is, small or large, if it's far enough in the past... No your honor. No, every case is different. So this is a balancing test. So certainly there are going to be cases where a prior conviction is so related to or so closely connected to the other prior offenses, prior convictions, that it might have some probative value with respect to whether the more recent crimes or separate occasions from each other or from the prior conviction. Certainly there will be situations where a defendant's going to want to stipulate but there isn't a need to stipulate because the prejudice is not going to be so high. The prejudice towards the defendant won't be so high and because the probative value of that evidence will have more weight when looking at the other prior convictions. Here we have... The question of prejudice against the defendant usually goes to the question of whether he's guilty of the crime that he's being charged with. The jury's already found that he's guilty. The jury, under your hypothesis, is already prejudiced against him. To some degree, yes your honor, but the jury, the finding of the occasions different fact here increased his guideline range by 15 years on the top end. It doubled effectively. Does the jury know that or know that it's going to increase his sentence? To follow up a little bit on Judge McKeague's question, the jury hasn't heard about this earlier 2000 crime yet. It just found him guilty of the later ones. Now they're going to find even, if they hear this, they're going to hear even more bad evidence about this defendant. How do you weigh in when this should come in or not come in? Does it have to be more related to the subsequent crimes? Does the jury have to know that it then will impact the length of the sentence? The jury can't be told that this is going to change the defendant's sentencing range in general, but the jury knows it's doing something. It's making some decision that is detrimental to Mr. Mixon. Otherwise, why would the government be trying to prove these aren't different? It's clear that if they find separate occasions, that's going to be detrimental to Mr. Mixon. But you started out by focusing on the fact that this, I think you said, had a 15 year difference sentence. So certainly the extent of the consequence of this is not known to the jury. The extent of the consequence is not known to the jury, but the risk that the jury would unfairly find occasions different is equal to, if not greater than, the risk that they would wrongly convict him in the first place. Because the amount of time it will increase his sentence by is the same as the statutory max of the applicable 922 G. Old Chief is your main precedent in this area? Old Chief and the balancing under Rule 403 itself. That was a 403 case? Yes. We haven't extended Old Chief, I don't think? I'm not aware. That was a case where they conceded the whole category, the whole determination of a felon status was conceded. Here you want to concede part of a broader consideration. That seems to me like a pretty material difference. In other words, you can concede the whole thing. If he wants to concede, he's had three prior felonies, that's fine, but it's slightly different to be slicing it up the way you want to do it. I'm not saying that's as positive, but it feels different. I do agree, Your Honor, that this is further down the continuum. It's not exactly the same as Old Chief, but we're certainly a lot closer to Old Chief than we are to contemporaneous facts for a single carjacking, for example, where the facts are all really interrelated with each other. What is so clear here is that the government's task is to prove three separate occasions. We stipulated, we were willing to agree that this one offense was a completely separate occasion. The stipulation did all the work for the government with respect to that occasion, and there is nothing in this record on these facts that indicate that any of the evidence about that prior robbery had any ability to prove or disprove whether or not the three burglaries were related or not related to each other. How, just mechanically, if the stipulation were accepted or it kind of you prevail that we say the stipulation have to be accepted, would you just then ask the jury, like, do you find two separate occasions or at least two separate occasions? Because you just say, well, you already have one separate occasion. Like, how do you, is that how that gets reframed? Does the 2,000 robbery or not? Yeah, so in this case, Mr. Mixon asked that the jury be told that he had a prior robbery conviction that occurred in Dallas County on a certain date, and that constituted one of the three separate occasions. And then the jury, they never got further than that, but there certainly could be a continuum of what specific information would be given to the jury. I think there are limiting instructions that could be given to the jury. Obviously, you're not concerned at all about what is going on in the jury's mind when they receive a stipulation for the earlier crime, but they don't for the next three. I mean, how does the judge or the government or somebody explain that? So, a couple of things. I think that the distance between the crimes and the different types of crimes matters for this question. Here, it's so plainly obvious that a robbery that occurred 13 years earlier is not related to three burglary convictions that occurred within a seven-day window of each other. In this case, it is very clear. You may be correct about that, but that begs the question. How does the judge or somebody explain to the jury why they heard the facts of the three and they didn't hear the facts of the other one? Well, I guess, Your Honor, the same way that it's handled in a 922G case where the jury is given a stipulation on a specific element, there's also cases where the government and defendants agree to a stipulation and the jury is just told the parties agree on this element. But the government wouldn't agree. The government didn't agree. Right, but my point, Your Honor, is that the juries are given stipulations on one piece of evidence regularly and that doesn't tank their ability to make a decision with respect to the other elements. And certainly, if the government is worried about needing a limiting instruction, they could ask for one. And I think a limiting instruction would be fair. And, Your Honor, in some circumstances, I think the balance would come out differently to where a defendant might ask to stipulate, but the offenses are too close in time to where it would be. As Judge Adler asked, we've been asked to extend Old Chief to different contexts and we refused every single time, right? To my knowledge, yes, Your Honor. Has any other circuit extended Old Chief to occasions different inquiries? I believe this may be the first court to address the question, Your Honor. You're not asking that we say in all instances or even all instances that are 13 years beforehand, the judge has to take this, you know, the balance comes out such that 403 would say you have to accept the stipulation. You're just saying, like, in this case, because there's nothing about the earlier crime that is necessary for deciding whether the later crimes are separate occurrences. That's kind of given these particular aspects. Exactly correct, Your Honor. We are not seeking a categorical rule that defendants can always stipulate to a prior occasion. It's hard to imagine a situation where Rule 403 would require exclusion of the evidence if it doesn't require it here under these very specific facts. Thank you. Good afternoon. May it please the Court. My name is Luke McLaurin and I'm here on behalf of the United States. Mr. Mixon's convictions and sentence should be affirmed for two reasons. First, this Court's precedent regarding Tennessee burglary dictates the conclusion that Texas's identically defined and interpreted burglary offense also qualifies as generic act of burglary. Did we reach this issue in Purdy? Did we address recklessness? Was burglary predicated on a reckless offense inside the building in Purdy? It could have been. And Purdy construed an identical statute that has been interpreted by the Tennessee courts in the exact same way that Devon has interpreted the Texas burglary statute. And Purdy conducted the analysis. The argument there was made in Purdy that the A3 variant does not count because it does not require intent to commit a crime. And the Court rejected that. It said no, it counts as a remaining in form of burglary because it requires... But when Justice Sotomayor later says like you Sixth Circuit have never even haven't asked the recklessness question. I mean certainly in Purdy they were talking about the kind of remaining in and entry and when the mental state has to be, right? But not, you know, can recklessness itself suffice for burglary? But that was just all wrong, right? Like Gahn was just completely misreading the Sixth Circuit case law. So two responses to your question. The first response is yes. Justice Sotomayor was misreading the Sixth Circuit case law. She didn't even reference Purdy. I think it's notable if you look at her decision. She doesn't reference Purdy. She references Brumback. She references a bunch of other decisions that did rely on Purdy. But she didn't actually reference the case where this court actually considered the issue. So the fact that she, you know, overlooked that, I don't think the court... Or she didn't think they considered the issue in Purdy. Well, she didn't mention Purdy. Purdy wasn't even mentioned in any of the briefs, the cert briefs. So it's quite possible that Justice Sotomayor just simply wasn't familiar with all of the relevant Sixth Circuit case law. That's a possibility. So I don't think you should read much into Justice Sotomayor's misreading of Sixth Circuit case law. The second point is I think there's a premise in your question that is flawed. This offense isn't about whether recklessness suffices. And I think that the whole premise of their argument is based on a misunderstanding of how generic burglary works. And I think there is a lot of, I think, talking past each other in the briefs. So I'd like to clarify this point. There's, I think, a really important distinction to draw between when you're looking at an offense, there's a mens rear with respect to the conduct involved in the offense, and there's a distinction between the consequences or the results of that conduct involved in the offense. And in many offenses we see that there's a different mens rea associated with each piece of those things. Generic burglary only requires a specific intent mens rea as to the conduct. It does not require a specific intent mens rea as to the result. And that's precisely why Gonzales and these cases involving commission of reckless assault are not problematic. And the reason we know that generic burglary means this is because of Taylor. Taylor conducted the analysis. And where did it start? It started with Congress's 1984 definition of burglary, the one that was in the statute before it was amended in 1986. And Congress defined burglary there as entry remaining in a building or structure with intent to engage in conduct constituting an offense. And Taylor looked at the legislative history and said, look, it was very clear that Congress did not say that you have to know that you're going to commit a crime that you have to specifically intend I'm going to commit a crime. You just have to engage in conduct. What does Taylor say with intent to commit a crime in like four places? It does. And it says that that definition is identical to Congress's initial definition. And so we have to read. We have to understand what is intent to commit a crime. So your sense then is generic burglary. Generic burglary under Taylor isn't a specific intent crime. Maybe you have to intend the entry to be unlawful or the remaining end to be unlawful. But there has to be no specific intent at all for the crime that happens therein. You have to intend to engage in conduct which constitutes an offense. So you do not have to have specific intent as to the consequences of the conduct. But you do have to have intent to engage in the conduct. And that's that's precisely how Congress initially defined generic burglary. That is precisely what Taylor said when they said our definition of generic burglary, it is the same as the 1984 definition that Congress enacted. Because Congress didn't mean for a different definition. And this is our shorthand. And Taylor was also very clear. Look, there's going to be different formulations of this. And I think I think it's important when you look at Texas burglary and the statute is that this is how these courts have looked at it. Is what they're saying is it's not that there's no intent required. It's just you don't have to be the intent as to the consequences is not really that important. And so if you look at Devon, and I think it's really important to look at Devon because Devon is actually a binding decision from an en banc panel of the Texas Court of Criminal Appeals, which is the final authority in Texas on the meaning of criminal statutes. And that court said what this a3 prohibits is essentially entering, forming an intent, and then committing a crime. And what that what the way Texas has read its burglary statute and the way that Tennessee has read its burglary statute is essentially the commission of the offense or the attempted commission of the offense is a method of proving the intent to commit the crime. In courts, state courts have freedom to do that. So what do we do with Gonzalez then? Right? Is that should the judge not have accepted that plea? Because he didn't plea to facts that show that he intended to commit a crime. He agreed reckless, right? I think I think Gonzalez I think is irrelevant here. Texas, the Texas Court of Criminal Appeals has told us what the elements of the statute mean. Gonzalez didn't interpret the elements. Gonzalez simply accepted a plea. Right, but to accept a plea, right, you need to plea to the elements of the offense. Yeah. So I'm asking you should the judge have not accepted the plea in Gonzalez? No, I think that the the conduct that was omitted by Gonzalez is sufficient to show an intent to engage in conduct that constitutes an offense. Yet all he pled to is recklessness. Recklessness as to the consequences, but he's still, and I think this is important if you look at Texas law, Texas law is crystal clear on this point if you look at its interpretation of assault. Assault is a result of conduct offense. The mens rea, an assault for Texas, only applies to the consequences. You still have to intentionally engage in conduct that causes harm. You don't have to be intentional as to your desire to cause harm to somebody. You can be reckless as to whether your actions are going to cause harm. You still have to engage in volitional actions for it to be an assault. And so I think Gonzalez doesn't really prove anything for for my colleague on the other side. And that's precisely why I think you've seen not only the Fifth Circuit but the Eighth Circuit reject these later cases. You look at the Eighth Circuit in Hutchinson. It dealt with the same situation, dealt with the same kind of examples that were brought up. And the Eighth Circuit said, look, that doesn't prove the point. That doesn't show that this Texas offense falls outside. They looked at exact same cases. Wallace looked at these cases and said, that doesn't get you there. And I think it's because of the the proper understanding of generic burglary is what the Supreme Court and Senate and Taylor, that it requires that the intent element is intent to engage in conduct that constitutes an offense. So if you are engaging in conduct but you you may not have the mens rea as to you may be reckless as to the consequences of that conduct, that's still fine. And that makes sense with precisely why Congress wanted to include burglary in the statute. I think it's important to look at what the Supreme Court has said in Quarrels when interpreting the scope of generic burglary. It says we don't just look at, you know, a survey of case law. We also look at what was Congress trying to achieve here. And is this distinction in how states have drawn up or allowed proof about different elements of burglary, is it the kind of distinction that matters for the purpose for which Congress included burglary? In Quarrels, it was distinction between whether you have intent at the time, the initial time you remain in, or whether you have intent throughout the time that you're remaining in. And the court there said it doesn't matter. The same would be true for this scenario. It's actually, I mean, the scenario of somebody who actually enters and forms the intent to commit a crime and then actually follows through and commits a crime, that person actually poses an even greater danger than the person who just enters with an intent to commit a crime. Because there's somebody who's actually followed through on that intent. And so I think the scenario that we're facing with here is precisely the kind of thing that Congress wanted to include in generic burglary. And we know that because of the way that Congress initially formulated the definition of burglary, as Taylor talked about, and as Taylor said, our definition isn't any different than that initial 1984 definition. And that tells us that this intent element, it isn't like specific intent as to the consequence, it's only intent as to the conduct. And that's precisely what we see in Gonzales, that's what we see in all of these cases. And so I think that's the reason why you've seen every single court to have addressed Texas burglary. The Fourth Circuit, the Fifth Circuit. Let me just give you a hypothetical to see if I'm understanding your argument. You have, you know, a homeless person is in a building for warmth, right? And they have no intent to commit a crime when, besides the trespass, right, when they go in the building. And they're in the building and they don't form an intent to commit a crime. They're not saying, looking around saying, oh I'm gonna steal this, I'm gonna steal that. They're just waiting there. Then they hear someone come in, okay? And, well, they don't mean to harm anyone and they don't, you know, they're not there to steal anything. So they just run out, right? And in the process they knock someone over, right? Inadvertently. You know, they're maybe reckless in their conduct, they certainly don't mean, but they intend to run. You're saying that the intent to run is enough. Intent for Taylor. Well, they're not running at someone, right? They're out. You got to stay with my hypo. If they're not, actually, I don't think your hypo actually demonstrates the commission of an assault. And that's that's the problem. I mean, I think if somebody has actually formed an intent enough to engage in conduct and is then reckless about the consequences of that conduct, they will have formed an intent to engage in conduct that happens to constitute an offense. So if they intend to, like, slam the door behind them, maybe they're running and then that hits someone, that intent is enough? Yeah, I think if they're intending to engage in conduct that constitutes a crime, that's enough under Taylor's definition. And that is entirely consistent with the purpose for why Congress included burglary as a violent felony. It's the kind of offense that creates a serious risk of potential injury to others. And in the in the A3 variant of burglary, that risk is actually materialized. It happens. The offense is actually committed. And I think that what's important is when you look at the Texas case law, they're saying we're not dispensing with the intent element. We're just simply allowing the commission of the offense, or the attempted commission of the offense, to suffice as proof of the intent element. And that's exactly how LaFave read these burglary statutes as well. LaFave, the treatise that Taylor placed such great weight on, when it looked at these these statutes like Texas's, it didn't say, oh no, they're just dispensing with the intent element. It says, no, what they're doing is they're recognizing that sometimes intent can be hard to prove. And so they're providing an alternate proof for the intent element. And that's that's exactly how the Texas courts have read this statute. That's how the Tennessee courts have read the identically worded statute. And I think that that's the reason you see every court to have considered this issue. The Fourth Circuit, the Fifth Circuit, the Eighth Circuit, in this court and pretty, all have said these kinds of offenses qualify as generic burglary because they fit within that understanding of generic burglary. Unless there are any other questions on the on the burglary issue, I'm certainly happy to answer any. I'll move on to the old chief issue. Why is it, why a 13-year offense, there's, it's probably hard to think that that's going to be considered in the same occasion as offenses, you know, more than a decade later. So why is the government opposed to not allowing a defendant to carve that one off and then, in some ways it makes the, makes the job easier for the jury in a sense, only to find, I guess, two more offenses? Well, I'll give two responses. First, sort of at a general theoretical level, the government has the burden of proof in these cases. And you don't know ahead of time what a jury is going to find persuasive, what a jury is going to find convincing. And stipulations, when they're given to a jury, juries do not have to accept stipulations. They can accept them, but they're not required to accept them. And the government has a very heavy burden in these cases. And when you're putting on, when you're telling the jury, okay, in the jury instructions stipulation or instruction from the, isn't this more like an instruction from the court? The instruction from the stipulation, but it's presented to the jury as an instruction, right? Like, I have found, or we were, or well, the court can't find, but generally when stipulations are presented, they're presented in a way that says the jury can treat it as conclusive evidence. That can is important. Jury is not required to accept a stipulation. And the government has the burden. It's a heavy burden. The heaviest burden exists in the law. Could you just change the jury questionnaire to ask them to find two separate offenses or at least two separate offenses? Ask if they found that. You know, you have one that's already taken, taken care of. I don't think we can because the Supreme Court has said very clearly the question of different occasions has to be resolved by a jury. And so you can't have the judge say, I'm going to take out one of these offenses and legally treat it as separate because the parties have stipulated. So you still have to have that go before the jury. I mean, I don't, I don't think Erlinger allows us to break up this element in that way. And so you have to present it to the jury and we're telling, and the jury is getting these instructions from the judge about what different occasions mean and says, you look at timing, location, you know, basically the who, what, where, when, why of each offense. And the government's saying, okay, we've got to prove who, what, where, when, why. We've got to show that. That's, that's evidence that the jury is being told they should consider. So we're going to present it. If we have it about these offenses, we want to present it. Now, isn't that argument about like a jury can reject a stipulation? Like how does that not even like defeat old chief, right? Like it could be that in a 922 G case, like the jury then rejects the stipulation that there was a prior felony and that this person was a felon. Like anytime you have a stipulation, you could just say like, well, we don't want to accept it because you know, the jury could, the jury, I mean, it just seems like a very, very like broad roaming argument that, that means, you know, stipulations could never be really taken into account in 403 balancing, which is, which is certainly not our law. Well, well, I mean, that, that's, that's not the entirety of our argument and I see my time's elapsed. Can I finish answering your question? The, I think one of the key differences here between old chief is that old chief was looking at an element where the stipulation and the kind of proof that the government could offer as an alternative to the stipulation are pretty much identical, right? They're both abstract things, saying that a defendant was convicted of an offense punishable by a term of imprisonment for one year, right? These are abstract propositions. Here, by contrast, we have an abstract stipulation versus, okay, here are the details of the who, what, where, when, why, and how of this robbery. That's a, that's a, and that's a heavily fact-laden task that the court, that the jury is being asked to consider. That's what the Supreme Court has told us and that's a very different kind of thing. The proof... Do the facts and the who, what, when, where, why of the Texas robbery in 2000 have evidentiary value for figuring out if the offenses that were in 2013 are separate occurrences? They have evidentiary value for showing whether that robbery was different than those offenses and the jury had... But otherwise, if, but otherwise, do they have any evidentiary value for, for saying whether those three offenses in 2013 were separate offenses or the same occurrence? I don't think it says anything about the separateness of those three, but it does say the separateness of the robbery from those three. Right, but that's what's already stipulated. I'm trying to figure out if, if it has evidentiary value beyond what the stipulation would give you. It also has evidentiary value that the defendant was the one, I mean, that I would say the, the, the fact that this robbery was very similar to the carjacking that they just convicted him of also makes it more likely that this was the guy who committed that robbery, and that is also something the jury has to find. The jury... But we already did the guilt phase. We're on this Erlinger phase now. No, no, no. The jury has to find that he actually committed that prior carjacking. Like, the prior carjacking is actually his offense. Oh, in, in, in 2000. Yes, they have to find the prior carjacking. But that, but that would be, but that would be stipulated too. I'm asking for evidentiary value beyond the stipulation. Well, the, the evidentiary value is you have a lot more details that show the separateness of this robbery from these other three offenses, and that is a question the jury has to decide. And... It doesn't have to decide how separate it is. It just has to decide that it's separate. Yeah, but the jury has to be satisfied that it's separate, and the government... I think the key question here is who gets to make the decision about what proof is put on? And the general rule is the government gets to make the decision because the government has the burden of putting on the proof. And we're not saying that there's, you know, I mean, certainly there could be a case where some evidence is, is so ridiculously prejudicial that the judge could decide to exclude it. But here we're on the question of what they asked for below was, they say, well, categorically, old chief requires you to accept this stipulation. And the judge says, I don't think it did. And the only question for this court is, did the judge abuse his discretion in reaching that conclusion? I mean, could he have, you know, maybe reached a different conclusion? Possibly. Although the prejudicial value, I think, as, as, you know, Judge McKee and Judge Ridler were pointing out, there's really not much prejudice about this because of the nature of the different occasions inquiry. The fact that this was similar to the carjacking just committed isn't, make it any more or less likely that offenses were committed, that his prior offenses were committed on different occasions. There's simply no logical connection there. So I think the, the prejudicial value is pretty low. Could there be a case where, you know, the prejudicial value might be ridiculously high? It's possible. And district judges have discretion to manage this. And the question this court has to answer is, did this judge, in this case, abuse his discretion? And we think the answer to that is no. I mean, the, the, the judge was presented with this categorical request saying, government can't introduce anything about this prior robbery. And the general rule is, the government gets to decide how it's going to put on its case. And we don't know, ex ante, what kind of evidence the jury is going to find convincing. And, any more questions? So, I think you're well over your time. Okay. Thank you. Thank you, Judge Railer. Excuse me. Um, quickly, your honors, with respect to whether the, uh, Texas burglaries qualify as violent felonies, uh, we would just want to point out that the plain text of the Texas statute encompasses negligent conduct as well as strict liability crimes. So we're looking beyond just recklessness to other offenses as well. Um, with respect to the 403 argument, I do just want to point out that in this case, there was a stipulation on the prior felony element that was submitted to the jury during the guilt phase. So during the 922 G1 phase, and that was presented to the jury as an instruction that they were obligated to conclude that that element had been found. Um, your honors, 403 is necessarily a fact intensive question, and it rightfully, uh, lays with the discretion of district court judges. But the district courts still must operate within guardrails. That discretion is not unbridled. And a ruling in favor of Mr. Mixon here would merely set the very outer limits of how rule 403 operates in this brand new, occasions different context. I'm just not following you at all. Why, why, no matter where, how we come out on this, how does this broaden or narrow 403 in completely different contexts? I don't think it, I don't think it does broaden or narrow rule 403 at all. It's a new, maybe I missed your point then. I'm sorry. I, I am, um, my point is just that a ruling for Mr. Mixon in this case would set the outer bounds of when, um, evidence should be excluded. It's a ruling for Mr. Mixon in this case is not going to create a categorical rule that defendants always get to stipulate. It's also not going to give the judges answers on much closer cases. But this was so clearly prejudicial and so clearly different with no probative value towards the remaining question that this is an easy case. And if this evidence should not have been excluded, then I can't imagine what sort of evidence would be excluded. Um, we would stand on our briefing on the Commerce Clause issue. Um, and of course we would ask the court to remand. Thank you. Thank you very much. Very well argued case from both sides. It will be submitted.